# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BODNAR,<br><br>           Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>           Defendants. | Case No.  1:16-cv-01398-SAB (PC)<br><br>ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 1)<br><br>THIRTY DAY DEADLINE |

Plaintiff Thomas Bodnar is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Local Rule 302.  (ECF No. 6.)  Currently before the Court is Plaintiff's complaint, filed September 21, 2016. (ECF No. 1.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1  1915(e)(2)(B).

2      A complaint must contain "a short and plain statement of the claim showing that the

3  pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

4  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5  conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

6  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate

7  that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v.

8  Williams, 297 F.3d 930, 934 (9th Cir. 2002).

9      Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings

10 liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d

11 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be

12 facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer

13 that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss

14 v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant

15 has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's

16 liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572

17 F.3d at 969.

18                                    **II.**

19                         **COMPLAINT ALLEGATIONS**

20     Plaintiff is in the custody of the California Department of Corrections and Rehabilitation

21 ("CDCR") and is currently incarcerated at the California Substance Abuse Treatment Facility,

22 Corcoran.  Plaintiff brings this action alleging denial of medical care while he was housed at

23 Valley State Prison ("VSP").

24     From March 2013 through August 2016, Defendants Maddax, Johnson, and Sisodia were

25 at one time Plaintiff's primary care physician.  (Compl. 10.[1])  Each of them noted in their

26 progress notes that Plaintiff complained of sharp pain in his left shoulder and numbness in the

27

28 [1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the
   CM/ECF electronic court docketing system.

                                     2

fourth and fifth fingers of his left hand and that he had a prior shoulder injury. (Compl. 10.) Each of them saw Plaintiff after he requested medical services stating that his left shoulder pain and numbness was getting worse. (Compl. 10.) Plaintiff told each of them that he had been sent to an orthopedic surgeon to determine the cause of his shoulder pain while he was housed at Ironwood State Prison. (Compl. 10.) Plaintiff was transferred to VSP after he had been seen by the orthopedic surgeon. (Compl. 10.) Defendants Maddax, Johnson, and Sisodia did not continue the care ordered by the orthopedic specialist or provide any type of alternative care. (Compl. 10.) They did not follow-up on the orthopedic referrals or recommendations from 2012. (Compl. 11.) Defendants Maddax, Johnson, and Sisodia each noted that Plaintiff was continuing to have problems with his left shoulder and that they would request the services of an orthopedic surgeon but did not do so. (Compl. at 11.) All that Defendants Maddax, Johnson, and Sisodia did was continue to prescribe Plaintiff medications, without ordering any further testing or specialist referrals to determine the cause of his pain. (Compl. 11.)

Plaintiff was sent to an orthopedic surgeon in 2015. (Compl. 11.) The orthopedic surgeon ordered some neurology testing to be done. (Compl. 11.) If the neurologic testing showed nothing, then Plaintiff might need other tests or exploratory surgery. (Compl. 11.) Plaintiff would need to be seen after the tests were done. (Compl. 11.) Plaintiff had neurologic tests, but Defendant Sisodia did not return Plaintiff back to the orthopedic surgeon after that neurology testing was completed. (Compl. 11-12.) Plaintiff completed a medical request asking to be sent back to the orthopedic surgeon but was never sent for a follow up appointment. (Compl. 12.) Plaintiff was not scheduled follow-up appointments and contends that he should have been seen for follow-up appointments sooner than 90 days for his type of medical complaint. (Compl. at 14.) Plaintiff alleges that the delays in treatment have caused his condition to worsen and become more frequent. (Compl. 13.) Plaintiff contends that these type of delays have caused VSP to be ranked in the bottom 4 of the 33 prisons in a 2016 evaluation of medical services. (Compl 14.)

Plaintiff saw Defendants Wall and Sanchez more than once for complaints of sharp pain in his shoulder and numbness in his left hand. (Compl. 14.) Plaintiff told Defendants Wall and

1  Sanchez that his condition was getting worse and more frequent. (Compl. 14.) Plaintiff did not

2  see his treating physician for two to three weeks after seeing Defendants Wall and Sanchez.

3  (Compl. 14.) Plaintiff contends that any reasonable physician would have seen him for

4  symptoms of sharp needlelike pain in his shoulder within seven days and having to wait two to

5  three weeks was improper or unacceptable care. (Compl. 15.) Plaintiff told Defendants Wall

6  and Sanchez that the orthopedic surgeon wanted to see Plaintiff after the neurology tests were

7  completed. (Compl. 15.) Defendants Wall and Sanchez failed to make sure that Plaintiff went

8  back to the orthopedic surgeon. (Compl. 15.)

9       Defendant Doe 1 was a physician who treated Plaintiff from March 2016 until May 2016

10  when Plaintiff moved to D-yard. (Compl. 16.) Plaintiff never saw Defendant Doe 1 again after

11  he put in a request to be sent back to the orthopedic surgeon. (Compl. 16.) Plaintiff had an

12  appointment with Defendant Doe 1 but it was cancelled and Plaintiff was told it would be

13  rescheduled. (Compl. 16.) However, the appointment was never rescheduled. (Compl. 16.)

14       Defendant Doe 2 worked in the medical services scheduling inmates for medical services.

15  (Compl. 17.) Defendant Doe 2 did not schedule Plaintiff to be taken for medical services as

16  requested and failed to reschedule Plaintiff for appointments that were cancelled. (Compl 17.)

17       Defendant Doe 3 was Chief Medical Officer at VSP from March 2013 to August 2016 at

18  VSP. (Compl. 17.) Doe 4 is the Chief Executive Officer of medical services at VSP from March

19  2013 through August 2016. (Compl. 19.) Defendant Doe 3 and Doe 4 failed in their duties by

20  having inadequate policies and procedures governing medical care of inmates. (Compl. 18.)

21  The deficiencies that existed allowed delays in inmates seeing specialists, rescheduling

22  appointments, policies that govern follow up visits, utilizing registered nurses for referral to the

23  treating physician, policies that classify "emergency", "urgent," or "routine" care, failed

24  oversight over the physicians in their duties to limit reschedules and other deficiencies that

25  caused VSP to be ranked in the bottom four on the 2016 evaluation. (Compl. 18.)

26       Defendant Doe 5 was Plaintiff's primary care physician on D-yard from June 2016 to

27  August 2016. (Compl. 19.) Plaintiff did not see this Defendant after requesting medical

28  services. (Compl. 19.)

1    Defendant Doe 6 was a nurse who worked in Central Health from the end of June 2016

2   and July 2016.  (Compl. 20.)  Plaintiff requested medical services for over three years to try to

3   find out what was causing his shoulder pain.  (Compl. 20.)  Plaintiff was scheduled to see his

4   doctor on the C-yard and was moved to D-yard.  (Compl. 20.)  Plaintiff put in a medical request

5   to see the doctor.  (Compl. 20.)  About July 5, 2016, Plaintiff was an add-on to the nurse at

6   Central Health.  (Compl. 20.)  Defendant Doe 6 saw Plaintiff and told him that because his

7   medical request stated it was for pain Plaintiff could not be referred to the doctor.  (Compl. 20.)

8   Plaintiff was advised that he needed to write a new request without the word pain in it.  (Compl.

9   21.)  As long as the request stated that Plaintiff wanted to be seen for pain, he would be referred

10  to the nurse.  (Compl. 21.)  Plaintiff asked to be evaluated for pain and referred to the doctor.

11  (Compl. 21.)  Defendant Doe 6 stated that it does not work that way.  (Compl. 21.)  Defendant

12  Doe 6 tore up Plaintiff's request and told him to put in a new request.  (Compl. 21.)  It is against

13  CDCR policy to destroy medical records.  (Compl. 21.)

14      Plaintiff brings this action alleging deliberate indifference to his serious medical needs

15  and malpractice under California law.  (Compl. 21.)  Plaintiff is seeking monetary relief.

16  (Compl. 9.)

17      For the reasons discussed below, Plaintiff's complaint fails to state a cognizable claim for

18  a violation of his constitutional rights.  Plaintiff shall be granted an opportunity to file an

19  amended complaint to correct the deficiencies identified in this order.

20                                    **III.**

21                                **DISCUSSION**

22  **A.      Liability Under Section 1983**

23      Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

24  other federal rights by persons acting under color of state law.  <u>Nurre v. Whitehead</u>, 580 F.3d

25  1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006);

26  <u>Jones</u>, 297 F.3d at 934.  There is no <u>respondeat</u> <u>superior</u> liability under section 1983, and

27  therefore, each defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.

28  To state a claim, Plaintiff must demonstrate that each defendant personally participated in the

                                      5

1  deprivation of his rights.  Jones, 297 F.3d at 934.

2        1.      California Department of Corrections and Rehabilitation

3        Plaintiff brings this action seeking monetary damages against CDCR.  "The Eleventh

4  Amendment bars suits for money damages in federal court against a state [and] its agencies . . ."

5  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007), "regardless of the relief

6  sought, unless the state unequivocally consents to a waiver of its immunity,"  Yakama Indian

7  Nation v. State of Washington, 176 F.3d 1241, 1245 (9th Cir. 1999); see also Seminole Tribe of

8  Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996).

9        The Department of Prisons is a state agency entitled to Eleventh Amendment Immunity.

10  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Therefore, CDCR is entitled to Eleventh

11  Amendment immunity in this action.  Plaintiff cannot bring an action seeking monetary damages

12  against CDCR.  Plaintiff's claim for monetary damages against the CDCR is dismissed without

13  leave to amend.

14        2.      Official Capacity Claims

15        Plaintiff brings claims against Doe 3, the Chief Medical Officer, and Doe 4, the Chief

16  Executive Officer, alleging that there were deficient policies and procedures that contributed to

17  the failure to provide him with appropriate medical care.  A suit against a state official in his or

18  her official capacity is not a suit against the official but is a suit against the state itself.  Will v.

19  Michigan Dep't of State Police, 491 U.S. 58, 71; McRorie v. Shimoda, 795 F.2d 780, 783 (9th

20  Cir. 1986).  Therefore, the Eleventh Amendment bars official capacity claims seeking damages

21  against a state official.  Hafer v. Melo, 502 U.S. 21, 27 (1991) Flint v. Dennison, 488 F.3d 816,

22  824–25 (9th Cir. 2007); Holley v. California Dep't of Corr., 599 F.3d 1108, 1111 (9th Cir. 2010).

23  Plaintiff cannot sue prison officials in their official capacity for monetary damages.  Therefore,

24  Plaintiff's claims against Defendants Doe 3 and Doe 4 for monetary damages are dismissed

25  without leave to amend.

26        **B.      Eighth Amendment**

27        While the Eighth Amendment of the United States Constitution entitles Plaintiff to

28  medical care, the Eighth Amendment is violated only when a prison official acts with deliberate

6

1  indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

2  Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

3  Cir. 2014); Wilhelm, 680 F.3d at 1113; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To

4  state a claim, a plaintiff "must show (1) a serious medical need by demonstrating that failure to

5  treat [his] condition could result in further significant injury or the unnecessary and wanton

6  infliction of pain," and (2) that "the defendant's response to the need was deliberately

7  indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).   The requisite state of

8  mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow,

9  681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

10      "A difference of opinion between a physician and the prisoner – or between medical

11  professionals – concerning what medical care is appropriate does not amount to deliberate

12  indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989),

13  overruled in part on other grounds, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23

14  (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986).  Rather, Plaintiff "must show that

15  the course of treatment the doctors chose was medically unacceptable under the circumstances

16  and that the defendants chose this course in conscious disregard of an excessive risk to [his]

17  health."  Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks

18  omitted).

19      1.      Defendants Maddax, Johnson, and Sisodia

20      Plaintiff's allegations against Defendants Maddax and Johnson are insufficient to

21  demonstrate that these defendants were aware that Plaintiff had a serious medical condition and

22  failed to appropriately respond.  Plaintiff claims that Defendants Maddax and Johnson noted in

23  their progress notes that Plaintiff complained of sharp pain in his left shoulder and numbness in

24  the fingers of his left hand and that he had a prior shoulder injury.  Plaintiff contends that

25  Defendants Maddax and Johnson did not continue the care ordered by the orthopedic specialist in

26  2012 or provide other care, but he does not identify any care that the orthopedic specialist found

27  to be needed.

28      Defendants Maddax, Johnson, and Sisodia provided Plaintiff with pain medication and

1  told Plaintiff that he would be referred to an orthopedic specialist. Plaintiff alleges that

2  Defendants Maddax, Johnson, or Sisodia did not complete a referral to an orthopedic surgeon.

3  However, according to the complaint, Plaintiff saw an orthopedic specialist in 2015 who was

4  unable to determine the source of Plaintiff's pain and ordered neurologic testing. Plaintiff seeks

5  to hold all medical providers liable for the delay in medical care, but the complaint does not

6  contain sufficient factual allegations by which the Court can reasonably infer that Defendants

7  Maddax, Johnson, or Sisodia were aware that Plaintiff had not been seen by an orthopedic

8  specialist after Plaintiff was treated by the named defendant.

9  Plaintiff also alleges that after he was seen by the orthopedic specialist, Defendant

10  Sisodia did not ensure that Plaintiff was sent for a follow up appointment. However, the

11  complaint contains no allegations that Defendant Sisodia saw Plaintiff after he was seen by the

12  orthopedic specialist or any allegation by which the Court can reasonably infer that Defendant

13  Sisodia was aware that Plaintiff needed to be returned for a follow-up appointment.

14  Plaintiff's allegations that he should have been seen more often are merely a

15  disagreement regarding the medical care that is appropriate and does not amount to deliberate

16  indifference." Snow, 681 F.3d at 987. Plaintiff's conclusory allegations that the defendants

17  should have done more are insufficient to state a plausible claim of deliberate indifference.

18  Iqbal, 556 U.S. at 678. Based on the allegations in the complaint, the Court cannot reasonably

19  infer that Defendant Maddax, Johnson, or Sisodia were deliberately indifferent to Plaintiff's

20  serious medical need. Id. at 678-79. Plaintiff has failed to state a cognizable claim against

21  Defendants Maddax, Johnson, or Sisodia.

22  2.  Defendants Wall and Sanchez

23  Plaintiff alleges that Defendants Wall and Sanchez did not ensure that Plaintiff was seen

24  in a timely manner after seeing him for his shoulder pain. Plaintiff's allegation that he was not

25  seen by a physician as quickly as he thought he should be seen is insufficient to state a

26  cognizable claim that Defendants Wall and Sanchez were deliberately indifferent to his serious

27  medical need.

28  Plaintiff also alleges that Defendants Wall and Sanchez were deliberately indifferent by

8

1    failing to refer him to an orthopedic surgeon.  However, Plaintiff's complaint is devoid of any

2    time frame in which he was seen by Defendants Wall and Sanchez, or any allegations by which

3    the Court can infer that Defendants Wall and Sanchez, as nurses, were responsible for referring

4    Plaintiff to an orthopedic specialist, were aware that Plaintiff had not been referred to an

5    orthopedic specialist, saw Plaintiff after he had received his neurology tests and were aware that

6    Plaintiff needed to be referred back to the orthopedic specialist, or were otherwise deliberately

7    indifferent to his serious medical condition.  Plaintiff has failed to state a cognizable claim

8    against Defendant Wall and Sanchez.

9            3.       Defendant Doe 1

10   Plaintiff's allegation that his appointment was cancelled and he did not see Defendant

11   Doe 1 after he put in a request to be returned to the orthopedic specialist is insufficient to show

12   that Defendant Doe 1 was aware that Plaintiff had a serious medical need and failed to

13   adequately respond.  Plaintiff has failed to state a claim against Defendant Doe 1.

14           4.       Defendant Doe 2

15   Plaintiff alleges that Defendant Doe 2 was responsible to schedule medical appointments

16   and did not reschedule his appointments that were cancelled.  However, the allegation that

17   Plaintiff's appointments were not rescheduled without some factual allegations to demonstrate

18   that the defendant was aware of Plaintiff's serious medical need is insufficient to state a claim for

19   deliberate indifference to Plaintiff's serious medical need in violation of the Eighth Amendment.

20   Plaintiff has failed to state a cognizable claim against Defendant Doe 2.

21           5.       Defendant Doe 5

22   Plaintiff alleges that Defendant Doe 5 was his primary care physician from June 2016 to

23   August 2016 and Plaintiff did not see him after submitting a request for medical services.

24   Plaintiff has failed to allege any facts by which the Court can reasonably infer that Defendant

25   Doe 5 was aware that Plaintiff had a serious medical need.  Plaintiff has failed to state a

26   cognizable claim against Defendant Doe 5.

27           6.       Defendant Doe 6

28   Plaintiff's alleges that he saw Defendant Doe 6 about July 5, 2016, and Defendant Doe 6

9

1 refused to evaluate Plaintiff and tore up his medical request form. However, based on the

2 allegations in the complaint, Plaintiff was not seeking treatment on this date because he was in

3 pain or needed treatment immediately, but he wanted a referral to the doctor. Defendant Doe 6

4 instructed Plaintiff in how he needed to complete the form in order to get an appointment with

5 the doctor. Plaintiff requested that Defendant Doe 6 evaluate him and then refer him to the

6 doctor. The Court cannot find in the situation presented here that Defendant Doe 6 was

7 deliberately indifferent by informing Plaintiff on the procedure to request an appointment with

8 the doctor rather than referring Plaintiff directly to the doctor. Further, Plaintiff does not allege

9 that he suffered any harm by being required to properly complete a medical request form rather

10 than being referred to the doctor by the nurse. While tearing up the medical request form is

11 against CDCR policy, it does not rise to the level of a constitutional violation.

12     Plaintiff has failed to state a cognizable claim against Defendant Doe 7.

13     **C.     Amended Complaint**

14     Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely

15 given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiff shall be granted an

16 opportunity to file an amended complaint.

17     Plaintiff is advised that under Twombly and Iqbal "a complaint must contain sufficient

18 factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556

19 U.S. at 678. This requires factual content for the court to draw the reasonable inference that the

20 defendant is liable for the alleged misconduct. Id. A complaint stops short of the line between

21 probability and the possibility of relief where the facts pled are merely consistent with a

22 defendant's liability. Id. Further, while the court is to accept all "well pleaded factual

23 allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels,

24 conclusions, formulaic recitations of the elements of a cause of action or legal conclusions

25 couched as factual allegations, Twombly, 550 U.S. at 555. Finally, the conclusory allegations in

26 the complaint are not entitled to the presumption of truth. Iqbal, 556 U.S. at 681.

27     To state a claim under the Eighth Amendment, Plaintiff needs to set forth the factual

28 allegations against each named defendant sufficient for the Court to infer that the named

10

1  defendant was aware of Plaintiff's serious medical need and failed to adequately respond.

2  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010). While a complaint

3  should be brief, it must contain factual allegations against the named defendants. Here,

4  Plaintiff's complaint is largely composed of vague, conclusory allegations and "[t]hreadbare

5  recitals of the elements of a cause of action" that do not suffice to state a cognizable claim.

6  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). In filing his amended complaint,

7  Plaintiff should focus on stating what each defendant did or failed to do to violate Plaintiff's

8  federal rights, rather than merely reciting the elements of the claims he is attempting to bring.

9      Finally, Plaintiff's complaint shall not exceed 25 pages, double spaced, and may not

10  contain any legal argument or case citations. Plaintiff's amended complaint will be stricken

11  from the record if it fails to comply with this requirement.

**IV.**

**CONCLUSION AND ORDER**

14      Based upon the foregoing, Plaintiff's complaint fails to state a claim upon which relief

15  may be granted. Plaintiff is granted leave to file an amended complaint within thirty (30) days.

16  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of

17  this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d

18  605, 607 (7th Cir. 2007) (no "buckshot" complaints).

19      Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must

20  identify how each individual defendant caused the deprivation of Plaintiff's constitutional or

21  other federal rights: "The inquiry into causation must be individualized and focus on the duties

22  and responsibilities of each individual defendant whose acts or omissions are alleged to have

23  caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

24      Although Plaintiff's factual allegations will be accepted as true and "the pleading

25  standard Rule 8 announces does not require 'detailed factual allegations,' " "a complaint must

26  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

27  face.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "A claim has facial

28  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Plaintiff's claims for damages against the California Department of Corrections and Defendants Doe 3 and 4 are dismissed, without leave to amend;

3 Plaintiff's complaint, filed September 21, 2016, is dismissed for failure to state a claim;

4. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint; and

5. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated:  **May 1, 2017**

_____
UNITED STATES MAGISTRATE JUDGE

12